# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| SASKIA MADISON, a/n/f of § <br> Megan Madison, A Minor, § <br>     Plaintiff, § <br> § <br> v. § <br> § <br> WARREN REID WILLIAMSON, § <br>     Defendant. § | **CIVIL ACTION NO. H-06-0870** <br><br> Adversary Number 04-3317 |

## MEMORANDUM AND ORDER

The sole issue before the Court in this case is whether the state court judgment entered against Defendant Warren Reid Williamson on March 21, 2005, by the 215th Judicial District Court of Harris County, Texas, in Cause No. 2002-55218, *Madison v. Williamson and Smith* (the "State Court Judgment"), is excepted from discharge in Defendant's Chapter 7 bankruptcy proceeding, Bankruptcy Case No. 04-31143 (S.D. Tex., Houston Division), pursuant to 11 U.S.C. § 523(1)(6). The issue has been fully briefed with supporting evidence from the state court proceeding.[1] Having reviewed

---

[1] Plaintiff filed a Brief on the Merits of Discharge [Doc. # 19] and Defendant filed a Response [Doc. # 20]. The Court permitted additional briefing and the submission of matters, including *inter alia* the trial transcript and exhibits, from the underlying state court lawsuit. Plaintiff subsequently filed her Brief on Dischargeability [Doc. # 25], but Defendant neither filed additional briefing nor requested an extension of time to do so.

the full record and applied the governing legal principles, the Court holds that the State Court Judgment is non-dischargeable, based both on the application of collateral estoppel and on the Court's *de novo* review.

## I.     BACKGROUND

In October 2002, Plaintiff Saskia Madison, on behalf of her minor daughter, Megan Madison,[2] filed a lawsuit against Defendant in the 215th Judicial District Court of Harris County, Texas.[3] Plaintiff, alleging that Defendant had molested her seven-year-old daughter, asserted causes of action for negligence, assault, and false imprisonment.[4]

Defendant filed a voluntary petition in this District under Chapter 7 of the United States Bankruptcy Code on January 21, 2004. *See* Bankruptcy Case No. 04-31143 ("Bankr. Case"). On June 7, 2004, the Bankruptcy Court lifted the automatic stay to permit Plaintiff to prosecute her claims in the underlying state court lawsuit. *See* Order on Plaintiff's Motion to Modify Stay [Bankr. Case Doc. # 23].

---

[2]   The names used for Plaintiff and her minor daughter are pseudonyms.

[3]   Plaintiff also sued "Jane Smith," Defendant's wife at the time of the underlying lawsuit. The 215th Judicial District Court granted summary judgment in Smith's favor in December 2003.

[4]   The Court in Sections III and IV below will discuss in more detail the allegations, the evidence, the jury findings, and the State Court Judgment.

In May 2004, Plaintiff filed this adversary proceeding, Adversary No. 04-3317, objecting to discharge of the debt subject to the underlying state court lawsuit.

Defendant was given ample notice, but did not appear for trial of the state court lawsuit in September 2004. Plaintiff presented her evidence to the jury, and the jury returned a verdict in Plaintiff's favor on each claim. In connection with each claim, the jury found by clear and convincing evidence that Defendant caused harm to Plaintiff's daughter with "malice." *See* Jury Verdict, Exh. 3 to Plaintiff's Brief on the Merits of Discharge [Doc. # 19]. The jury was instructed that "malice" means:

(a) a specific intent by Warren Reid Williamson to cause substantial injury to [the child]; or

(b) an act or omission by Warren Reid Williamson,

  (i) which, when viewed objectively from the standpoint of Warren Reid Williamson at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

  (ii) of which Warren Reid Williamson had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

*Id.* at 5, 8, 11. The State Court Judgment, signed on March 21, 2005, incorporated by reference "the questions submitted to the jury and the jury's findings." *See* Final Judgment, Exh. 2 to Plaintiff's Brief on the Merits of Discharge [Doc. # 19].

On March 3, 2006, the United States Bankruptcy Judge recommended that the reference of Adversary No. 04-3317 be withdrawn, and this Court issued an Order [Doc. # 3] doing so. The only issue before the Court in this adversary proceeding is Plaintiffs' objections to discharge of the State Court Judgment. This Court subsequently stayed this case pending the completion of all appeals of the State Court Judgment. *See* Hearing Minutes and Order [Doc. # 9]. When all appeals had been completed, the Court in August 2008 lifted the stay and reinstated the case of the active docket. *See* Order [Doc. # 16].

The discharge issue has now been fully briefed and the parties have been given the opportunity to present all evidence they believe is relevant to that issue. The Court has reviewed the full record. Through the application of collateral estoppel and, alternatively, based on the Court's independent analysis of the evidence, the Court holds that the State Court Judgment is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6) and is not dischargeable.

## II.     **BANKRUPTCY CODE § 523(a)(6)**

Section 523(a)(6) provides an exception from discharge in bankruptcy for a debt based on the "willful and malicious injury by the debtor to another . . .." *See* 11 U.S.C. § 523(a)(6); *In re Keaty*, 397 F.3d 264, 269 (5th Cir. 2005); *In re Williams*, 337 F.3d 504, 508 (5th Cir. 2003). The statute requires that the injury be willful, not

merely that there be a willful act that leads to an unintended injury. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998); *In re Keaty*, 397 F.3d at 270. The test in the Fifth Circuit for whether a debt arises from conduct that results in an exception to discharge under § 523(a)(6) is whether the debtor acted with either "an objective substantial certainty of harm or a subjective motive to cause harm." *See In re Keaty*, 397 F.3d at 270; *In re Williams*, 337 F.3d at 509; *In re Vollbracht*, 276 F. App'x. 360, 361 (5th Cir. Oct. 24, 2007).[5] Stated differently, "the debtor must commit an intentional or substantially certain injury in order to be deprived of a discharge." *In re Williams*, 337 F.3d at 509. The creditor must prove by a preponderance of the evidence that the debt is not subject to discharge. *See In re Keaty*, 397 F.3d at 270.

### III. <u>COLLATERAL ESTOPPEL</u>

Collateral estoppel principles can be applied in bankruptcy discharge proceedings. *See In re Keaty*, 397 F.3d at 270 (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)); *In re Schwager*, 121 F.3d 177, 181 (5th Cir. 1997). Where the state court "decided the crucial element to non-dischargeability in the case below and . . . followed the same evidentiary standard," collateral estoppel can apply and

---

[5] The Fifth Circuit in *In re Vollbracht* added an additional inquiry for certain situations such as an argument that the injury was inflicted by a debtor acting in self defense. In those situations, not present here, a debt is excepted from discharge only if the conduct is not "sufficiently justified under the circumstances to render it not 'willful and malicious.'" *See In re Vollbracht*. 276 F. App'x. at 362.

relitigation of the dispositive issue is not required. *See In re Vollbracht*, 276 F. App'x. at 364.

Because the State Court Judgment was entered in a Texas court, Texas rules of collateral estoppel apply. *See In re Schwager*, 121 F.3d at 181. Collateral estoppel in Texas requires a showing that: (1) the facts to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were necessary to the judgment in the first action; and (3) the parties in the current lawsuit were adversaries in the first action.[6] *See id.*

In this case, Plaintiff has satisfied the requirements for the application of collateral estoppel. The state trial court, in response to an argument by Co-Defendant Jane Smith, avoided any problem with double recovery by issuing a Final Judgment awarding actual damages in the single, total amount of $3,000,000.00 and awarding exemplary damages in the single, total amount of $1,750,000.00. Although this was the amount awarded in the Verdict Form in response to the negligence question, the

---

[6] The Fifth Circuit in a § 523(a)(6) case from Mississippi stated the test for application of collateral estoppel as follows:

> In the Fifth Circuit, we generally apply collateral estoppel when "(i) the issue to be precluded [is] identical to that involved in the prior action, (ii) in the prior action the issue [was] actually litigated, and (iii) the determination made of the issue in the prior action [was] necessary to the resulting judgment."

*In re Vollbracht*, 276 F. App'x. at 363.

Final Judgment does not indicate that it is based only on the negligence count. *See* Verdict Form, Exh. 3 to Plaintiff's Brief on the Merits of Discharge [Doc. # 19]. The State Court Judgment clearly and explicitly incorporates the "questions submitted to the jury and the jury's findings." *See* State Court Judgment, Exh. 2 to Plaintiff's Brief on the Merits of Discharge. The State Court Judgment thus eliminated any argument about a double recovery, but it did not alter or eliminate any of the jury's findings, which are expressly incorporated into the judgment.

The dispositive issue on the discharge question is whether the debtor acted with either "an objective substantial certainty of harm or a subjective motive to cause harm." *See In re Keaty*, 397 F.3d at 270. This factual issue was fully and fairly litigated in the underlying state court lawsuit. Although Williamson elected not to appear at the actual trial of the state case, his attorneys conducted discovery and participated fully until the trial. The state court asked the jury to decide whether Williamson caused harm to Megan Madison that resulted from malice.[7] In response

---

[7]  As was noted above, the state court's definition of malice included conduct by Williamson that involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and of which Williamson had actual, subjective awareness of the risk involved. *See* Jury Verdict, Exh. 3 to Plaintiff's Brief on the Merits of Discharge [Doc. # 19], at 5, 8, 11. This definition places squarely before the factfinder the relevant discharge issue of whether the debtor acted with "an objective substantial certainty of harm."

to questions numbered 3, 7, and 11 in the Verdict Form, the jury answered clearly that he did.

The factual issue of whether the debtor acted with either "an objective substantial certainty of harm or a subjective motive to cause harm" was essential to the underlying State Court Judgment. Plaintiff claimed an entitlement to exemplary damages, which required a showing by clear and convincing evidence that debtor acted with malice. The jury found specifically that Williamson caused harm with malice, and that finding was essential to the jury's award of substantial exemplary damages.[8]

It is undisputed that Movant (Plaintiff in the state court lawsuit) and Debtor (Defendant in the state court lawsuit) were adversaries in the state court.

The state court jury decided the "willful and malicious" element to non-dischargeability, applying the "clear and convincing" evidentiary standard – a more stringent standard than the "preponderance of the evidence" standard applicable in the § 523(a)(6) proceeding. The state court judge expressly incorporated the jury's verdict into the State Court Judgment. As a result, having satisfied all requirements for the application of collateral estoppel, relitigation of the dispositive "willful and

---

[8]   While Plaintiff cannot collect more than $3,000,000.00, the jury's view that Williamson caused harm to Megan with malice is evident from its responses to the exemplary damages questions.

malicious" issue is not required. Based on the application of collateral estoppel, the debt evidenced by the State Court Judgment is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

## IV.    *DE NOVO* REVIEW

Even in situations where collateral estoppel may apply, the court deciding a claim that a debt is excepted from discharge is not bound by the state court judgment and may conduct an independent review of "the character and, ultimately, the dischargeability of the debt." *In re Vollbracht*, 276 F. App'x. at 363 (citing *Carey Lumber Co. v. Bell*, 615 F.2d 370, 377 (5th Cir. 1980)). The Court can inquire into the "*true* nature of the debt" even where the creditor has reduced the claim to a judgment. *Id.* at 364-65 (emphasis in original). Additionally, the Court can issue alternative bases for the decision on the discharge issue. *See generally Corwin v. Johnson*, 150 F.3d 467, 473 (5th Cir. 1998) (noting that court's ruling on alternative grounds does not detract from primary holding); *De Aguilar v. Boeing Co.*, 11 F.3d 55, 57 (5th Cir. 1993) (noting that district court dismissed case on two alternative grounds); *Watson v. United States ex rel. Lerma*, 285 F. App'x. 140, 142 (5th Cir. July 14, 2008) (noting that district court dismissed case on alternative grounds and addressing each ground on appeal).

There is evidence in the record that Williamson frequently gave seven-year-old Megan "Pokemon" cards and included her in his family outings. From this evidence, the Court finds that Williamson knew that he would need to gain Megan's trust and favor in order to lure her into the bedroom to molest her. There is also evidence in the record that some of Williamson's molestation of Megan occurred in a bathtub with his young daughter present.[9] The Court finds from this evidence that Williamson knew that he would have to create a situation in which Megan felt more comfortable without her clothes, and that Williamson calculatingly used his own daughter to accomplish this goal.

The evidence in the record is undisputed that Williamson enticed Megan into a bedroom in his house, removed her clothes, and sexually molested her. The evidence establishes that, notwithstanding Williamson's having given Pokemon cards to Megan to gain her trust and having bathed her with his daughter present to increase Megan's comfort level, Megan still told him "no" when he began to remove her clothes in the bedroom. Williamson disregarded Megan's protests. He removed her clothes and molested her. Williamson then told Megan not to tell anyone what he had done or she would never again be allowed to play with his daughter.

---

[9] Williamson used his bare, soapy hand to "wash" Megan while the two young girls were in the bathtub together.

Megan was very upset by the experiences with Williamson and later reported the event to her mother, to a therapist at the Interface Samaritan Counseling Center, and to the Houston Police Department.[10]  Her description of the molestation remained consistent and credible.  She remained fearful of Williamson and, indeed, of all men.  She required frequent counseling in an attempt to recover from the severe emotional injury caused by Williamson's conduct.

The Court finds from the evidence that Williamson molested Megan knowing that there was a substantial certainty that his conduct would injure her.[11]  Williamson is an intelligent, well-educated man with a young daughter of his own.  He was a Boy Scout Troop Leader, who received education and training regarding the protection of children from sexual abuse.  Williamson clearly understood what he was doing to Megan was highly improper and would cause her harm.  Indeed, there is nothing in the record to indicate that Williamson lacked an understanding that there was a substantial certainty that his sexual molestation would harm the seven-year old girl.

---

[10]  Williamson entered a plea of "no contest" to criminal assault and received deferred adjudication.

[11]  Under Texas law, there is presumption that an adult who molests a child intends to cause harm to the child.  *See, e.g., Allen v. Auto Ins. Co. v. Hartford Conn.*, 892 S.W.2d 198, 199-200 (Tex. App. – Houston [14th Dist.] 1994, no writ).  Although the presumption would apply in this case, the evidence that Williamson is an intelligent man who spent a great deal of time attempting to gain Megan's trust and overcome her lack of comfort in an inappropriate situation establishes the "willful and malicious" nature of Williamson's conduct without the presumption.

The Court finds, independently and without applying collateral estoppel, that the State Court Judgment represents an injury that was "willful and malicious" and is not dischargeable under § 523(a)(6).

## VI.    **CONCLUSION AND ORDER**

The State Court Judgment satisfied the requirements for the application of collateral estoppel establishing that it was a judgment for "willful and malicious injury by the debtor" to another. On that basis, the Court holds that the State Court Judgment is non-dischargeable pursuant to § 523(a)(6).

In an abundance of caution, the Court has reviewed the transcript and other documents from the state court proceeding. Based on that review and the application of the relevant standards, the Court concludes independently that the State Court Judgment was for "willful and malicious injury by the debtor" to another. Therefore, alternatively but not as a lesser holding, the Court holds *de novo* that the State Court Judgment is non-dischargeable pursuant to § 523(a)(6). It is hereby

**ORDERED** that the debt represented by the state court judgment entered March 21, 2005, by the 215th Judicial District Court of Harris County, Texas, in Cause No. 2002-55218, *Madison v. Williamson and Smith*, is not dischargeable in Defendant's Chapter 7 Bankruptcy Case, No. 04-31143. It is further

**ORDERED** that Plaintiff's Motion for Turnover Order, for Appointment of a Receiver, and for Preliminary Injunction [Doc. # 13] is **DENIED** *without prejudice*.

The Court will issue a separate, Final Order.

SIGNED at Houston, Texas, this 21st day of **November, 2008**.

_____
Nancy F. Atlas
United States District Judge